CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

AUG 09 2006

JOHN F. CORCORAN, CLERK
BY:
     DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Criminal Action No. 7:05CR00110 |
| Plaintiff, ) | |
| ) | **MEMORANDUM OPINION** |
| v. ) | |
| ) | By: Hon. Glen E. Conrad |
| JAMAR BERNARD WOODY ) | United States District Judge |
| Defendant. ) | |

This case is before the court on the defendant's motion to suppress evidence, motion to suppress any statements made by the defendant, motion to suppress identification, motion to disclose confidential informant, and motion to compel.[1] The defendant contends that the search subsequent to his arrest violated his rights under the Fourth Amendment because there was not probable cause for the search. The defendant also contends that statements made after his arrest must be suppressed. He claims that an out-of-court identification was unduly suggestive. In addition, the defendant claims that the government should disclose the identity of confidential informants to the defendant, and that the government should be compelled to deliver certain audio tapes to the defendant. For the reasons stated below, the court will deny the defendant's motions to suppress evidence and statements, motion to suppress identification, and motion to disclose

---

[1] At the hearing held on July 17, 2006, the defendant moved to have several outstanding motions held in abeyance. The defendant's two motions for separate trials and motion for disclosure of evidence to be used at trial will be taken under advisement. The defendant's motion to exclude video tapes will be dismissed as moot, in light of the changed trial date.

the identity of confidential informants. The court will grant in part and deny in part the defendant's motion to compel.

## FACTUAL BACKGROUND

On November 16, 2005, Detective Dwayne Palmer with the Roanoke County Police Department was performing surveillance and saw the defendant leave an apartment and get into the driver's seat of a gold Chevrolet mini-van. Palmer recognized the defendant because a confidential informant had previously made two controlled buys from the defendant, and had identified the defendant from a photograph array. The defendant left the parking lot and pulled onto a road. Palmer knew that the defendant's license to operate a motor vehicle had been suspended or revoked.

Based on this knowledge, Palmer notified the Roanoke City Police Department that the defendant was traveling towards Roanoke City.[2] Palmer continued to follow the defendant and speak with police from Roanoke City, however, until the defendant was pulled over by Officer Michael Thompson.[3]

Thompson testified that the defendant became combative after he was pulled over, and would not step out of the car for two to three minutes. After the defendant finally stepped out of the car, he was handcuffed and patted down. Officer C. Aaron Helton testified that he arrived shortly afterwards, and the defendant gave Helton permission to search his person. Helton said that either Jones or Helton handcuffed the defendant at that

---

[2] Palmer testified that he could not stop the defendant himself because he was driving an unmarked car and did not have the necessary equipment to perform a traffic stop.

[3] Officer Jones, a police recruit, was riding in the car with Thompson.

2

point.[4] Thompson testified that he then transferred the defendant to Helton, who took the defendant behind the van.

Helton testified that he patted down the defendant's sides, and felt a hard substance consistent with crack in the defendant's buttocks area. Helton asked Officer Meyer to search the defendant and confirm his suspicions. Meyer also said that he felt something. Helton testified that the defendant appeared to be trying to put his hands down his pants.

In the meantime, Thompson proceeded with a search of the van. Thompson testified that after about two minutes, he heard a commotion. It appeared as if another officer was trying to calm the defendant down, and the defendant was face-down on the ground. Helton had his knee on the defendant's back.

Thompson testified that the defendant was transported to the jail, where Helton made application for a search warrant, and then to the hospital. Helton told Thompson to ride in the back of the car with the defendant, because they thought that the defendant was hiding drugs in his buttocks. The defendant was taken to a hospital room, which was inspected by an officer before the defendant entered. Thompson testified that he was in the room with the defendant for one to two hours, which he spent holding the defendant's cuffed hands away from the defendant's back. Helton testified that he arrived at the room sometime after Thompson, having obtained a search warrant. Helton also testified that Thompson was not holding the defendant's hands, because the defendant had been cuffed in the front at the hospital. At some point, the defendant was uncuffed, and allowed to tie

---

[4]The officers gave conflicting accounts about the time at which the defendant was handcuffed.

3

his shoe. The defendant bent down to tie his shoes. Immediately afterwards, Helton saw a plastic bag two to three feet from the defendant's foot.

The defendant was then returned to jail, where Special Agent Kenny Garrett performed a field test on the substance recovered from the bag. While Garrett was doing the test, the defendant made statements about the drugs. The substance tested was cocaine base.

On July 13, 2006, the defendant was charged in a superceding indictment in the Western District of Virginia with: knowingly and intentionally possessing with intent to distribute more than five grams of a mixture or substance containing cocaine base on November 16, 2005 (Count One); knowingly and intentionally distributing a measurable quantity of a mixture or substance containing cocaine base on September 9, 2005 (Count Two); knowingly and intentionally distributing a measurable quantity of a mixture or substance containing cocaine base on September 16, 2005 (Count Three); and combining, conspiring, and agreeing to distribute and possess with intent to distribute a mixture or substance containing more than 50 grams of cocaine base and more than 500 grams of a mixture or substance containing cocaine powder (Count Four). The defendant then filed these motions, and the court held a hearing on the motions on July 17, 2006.

## **MOTION TO SUPPRESS EVIDENCE**

The defendant has moved to suppress all evidence seized and statements made to police. The defendant challenges the validity of his seizure and search, arguing that the

4

officers did not have probable cause.[5] According to the defendant, the officers did not possess the probable cause necessary to perform a body cavity search.

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." U.S. Const. amend. IV. Once a defendant is arrested, officers have probable cause to search the defendant's person incident to the arrest to discover and seize evidence of a crime.[6] Chimel v. California, 395 U.S. 752, 763 (1969). However, a search incident to arrest does not allow law enforcement officers to search without any restriction. A search incident to arrest is still "tested by the Fourth Amendment's general proscription against unreasonable searches and seizures." United States v. Edwards, 415 U.S. 800, 808 n.9 (1974).

In this case, the court concludes that a search of the defendant's person was reasonable incident to arrest, and that measures taken by the officers to recover suspected contraband were also reasonable. The court finds that Officer Helton's testimony that he performed a pat-down search of the defendant, incident to arrest, is credible. Although Officer Thompson's and Helton's testimony had inconsistencies, Helton's testimony must be credited because Thompson was occupied with other functions during the time that the defendant was searched. Thompson testified that he did not see a search of the defendant,

---

[5]The position taken by the defendant at the hearing was slightly different than that put forth in his motion. At the hearing, the defendant's attorney stated that he was not contesting that the defendant was driving on a suspended license, or that the arrest for driving on a suspended license was valid.

[6]The court declines to reach the issue of whether the defendant gave consent to the search of his person, as a search of the defendant's person could be justified by probable cause.

5

but he also testified that he was searching the defendant's van and dealing with the defendant's sister during the time that the search would have occurred.

Helton's testimony about the search incident to arrest is credible. Helton testified that he did a pat-down search, and felt a hard substance which, in his experience, was consistent with cocaine base. This recognition, in combination with the defendant's arrest for driving with a suspended or revoked license, provided the necessary probable cause to take the defendant to the hospital to retrieve the suspected contraband. The officers had probable cause to attempt to retrieve the drugs they believed the defendant to be holding. The court also concludes that the measures the officers took to retrieve the drugs, which resulted in a delay during which the drugs were dropped, were reasonable. The defendant's motion to suppress evidence will therefore be denied.

## MOTION TO SUPPRESS STATEMENTS

The defendant has filed a motion to suppress all statements made to police officers, claiming that the statements resulted from an illegal search and seizure. At the hearing, the defendant also claimed that the officers tried to elicit statements before the defendant received his Miranda warnings.

For the reasons discussed above, the court concludes that the search and seizure of the defendant were constitutional. Therefore, any statements made by the defendant as a result of the search and seizure were not invalid on that basis. Cf. Wong Sun v. United States, 371 U.S. 471, 485-86 (1963) (holding that the Fourth Amendment requires exclusion of verbal evidence derived from evidence obtained unlawfully).

Special Agent Garrett testified at the hearing about the circumstances under which the defendant made the statements in question. According to Garrett, he was at the Roanoke City Jail performing a field test on the evidence found next to the defendant's foot. The area where Garrett performed the field test was in the same area where the defendant was being processed. Garrett testified that he had used that area to field test drugs many times before, and had not deviated from his normal procedure. During his testimony, Garrett admitted that the defendant was under arrest at the time the field test was performed, and that Garrett did not know if the defendant had been given Miranda warnings.

In Miranda v. Arizona, 384 U.S. 436 (1966), the United States Supreme Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." Id. at 444. In this case, the parties agree that the defendant was under arrest at the time statements were made to Garrett, and it is unclear whether the defendant had been given Miranda warnings. The issue in question is therefore whether Garrett interrogated the defendant by performing the field test in front of him.

The Supreme Court addressed the meaning of "interrogation" in Rhode Island v. Innis, 446 U.S. 291 (1980). The Court concluded that the protections of Miranda must apply whenever a person in custody is subject to questioning or its "functional equivalent." Id. at 300-01. Interrogation encompasses "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are

7

reasonably likely to elicit an incriminating response from the suspect." Id. at 301. The likelihood of eliciting an incriminating response must be judged from the viewpoint of the suspect, rather than by the intent of the police. Id. Interrogation, however, only includes words or actions that officers "should have known were reasonably likely to elicit an incriminating response." Id. at 302.

The United States Court of Appeals for the Fourth Circuit has held that Miranda protections do not apply to "all declaratory statements by police officers concerning the nature of the charges against the suspect and the evidence relating to those charges." United States v. Payne, 954 F.2d 199, 202 (1992). The Court concluded that whether a statement by a law enforcement official about the evidence against a suspect is interrogation depends on the context and circumstances of each individual case. Id. at 203. In Payne, an officer told a suspect that the police had inculpatory evidence. Id. at 202. The Court concluded that the "innocuous statement" was not interrogation, as the agent did not know that her statement was "reasonably likely to elicit an incriminating response," and the agent did not use compelling influences, direct questions, or psychological tricks. Id. at 203.

Based on this precedent, and analogizing comments on evidence to display of evidence, the court concludes that Garrett's field test of the drugs in front of the defendant did not constitute interrogation under the circumstances of this case. Viewing Garrett's actions in the context of the case, the facts support this conclusion. Most significantly, the defendant already knew that the bag of suspected contraband had recently been retrieved from next to his foot. In addition, Garrett testified that he did not directly question the

8

defendant while he was testing the substance, and the defendant presented no evidence to the contrary. The facts of this case therefore support the court's conclusion that field testing the substance in the bag in front of the defendant did not violate the defendant's Fifth and Fourteenth Amendment rights, and the defendant's motion to suppress statements will therefore be denied.

## **MOTION TO SUPPRESS IDENTIFICATION**

A confidential informant purchased cocaine base in two, hand-to-hand, controlled buys. After the buys, a photograph was taken of the seller. Detective Palmer testified that he requested that the Richmond Police Department send him photographs of black males with similar characteristics to the defendant. The confidential informant was then given a stack of six photographs and asked if he recognized any of the photographs, upon which he immediately identified the defendant.

The defendant has filed a motion to suppress testimony concerning the identification, as well as any in-court identification resulting from the photo array. In support, the defendant claims that the process used by the police was unduly suggestive, because the photograph of the defendant was unique among the other photographs.

The court must consider two factors in determining whether an identification process is appropriate. First, the defendant must prove that the identification was impermissibly suggestive. Holdren v. Legursky, 16 F.3d 57, 61 (4th Cir. 1994). If the defendant cannot prove that an identification was impermissibly suggestive, the court's analysis ends. Harker v. Maryland, 800 F.2d 437, 444 (4th Cir. 1986). If the court

9

concludes that the identification was suggestive, however, the court must then determine whether the identification was reliable. Holdren, 16 F.3d at 61.

The court concludes that the photograph array presented to the confidential informant was not suggestive. The court has examined the photo spread in question, and finds that the defendant's face did not stand out among those displayed. All of the photographs are of black males roughly the same age, with similar facial hair, and with close-cropped hair. The court finds no appreciable differences, that would make the photo array unduly suggestive, in the skin tone, facial hair, or haircuts of the defendants. In fact, the court notes that one of the photographs was of the defendant's brother. As the defendant's counsel properly points out, the defendant's photograph is the only one in which the subject is covered by a light towel. The court notes, however, that only three of the subjects are covered by dark towels. One photographed man is wearing a dark shirt, and one photographed man has a light-colored shirt covered by a dark shirt. When the confidential informant identified the photographs, therefore, he would either find the defendant to be one of the three subjects covered by a dark towel, or one of the three subjects dressed differently. The court therefore concludes that the defendant's covering by a light-colored towel was not unduly suggestive. Upon review of the six photographs shown to the confidential informant, the court concludes that there is nothing so unduly suggestive about the defendant's photograph as to prejudice his rights to a fair photographic identification, and the motion to suppress identification will therefore be denied.

10

## MOTION TO DISCLOSE CONFIDENTIAL INFORMANT
## AND MOTION TO COMPEL AUDIO TAPES

The defendant has also filed a motion asking for the government to disclose the identities of all confidential informants, regardless of whether the informants will testify at trial. According to the defendant, the identities of the informants are necessary in order to investigate bias, investigate motives to fabricate, and to cast doubt upon the credibility of certain witnesses. In a related motion, the defendant requests that the government be compelled to deliver a copy of audio tapes of controlled buys. In response, the government claims that there is information that the defendant would pose a threat of harm to witnesses and informants if their names were revealed, and the tapes would reveal the identities of confidential informants.

The Supreme Court recognized an "informer's privilege" in Roviaro v. United States, 353 U.S. 53 (1957). The Court concluded that the government has the privilege to withhold the identity of persons who furnish information about violations of law. Id. at 60. The privilege is limited, however. Determining whether disclosure is required "calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense." Id. at 62. In doing so, the court must consider the charged crime, possible defenses, the potential importance of the informer's testimony, and other factors. Id. It is the defendant's burden to establish that the Roviaro criteria weigh in favor of disclosure, and he must show "something more than speculation as to the usefulness of such disclosure." United States v. Blevins, 960 F.2d 1252, 1258 (4th Cir. 1992) (internal citations omitted).

11

The Court of Appeals for the Fourth Circuit distinguishes between informants who are "participants" in a crime and those who are "mere tipsters." United States v. Price, 783 F.2d 1132, 1138 (4th Cir. 1986) (quoting McLawhorn v. North Carolina, 484 F.2d 1 (4th Cir. 1973)). Failure to disclose the identity of a participant in the crime is especially likely to amount to error if the informant is the only witness, other than the defendant, with first-hand knowledge of the criminal activity. Blevins, 960 F.2d at 1258.

One factor which weighs against disclosure is when the "safety and security of the person supplying the information is best protected by nondisclosure of his identity to those who may cause him harm." United States v. Smith, 780 F.2d 1102, 1108 (4th Cir. 1985). Danger to an informant must be given "significant weight" as a factor in balancing interests under Roviaro. United States v. Straughter, 950 F.2d 1223, 1232 (6th Cir. 1991).

In this case, the balancing of factors weighing for and against disclosure are very close. Although an informant was a participant in the controlled buys from the defendant, the defendant has made statements about "taking care of" and "dealing with" confidential informants, which imply a potential danger to the informant. In addition, the defendant has not presented more than speculation about the usefulness of knowing the identities at this stage in the proceedings. At this point, the court concludes that the need for identification of the informant does not outweigh the public interest in protecting informants. The court will therefore deny the defendant's motion for disclosure of the confidential informants. The court will grant in part and deny in part the defendant's motion to compel, requiring the government to turn over the video tape of the controlled buy, without sound, to the

12

defendant. In addition, the court will require that the defendant be given an accurate transcript of the audio tapes.[7]

## CONCLUSION

Because the police officers had probable cause to search the defendant, the motion to suppress evidence seized as a result of the search will be denied. The statements resulting from the valid search were not subject to the procedural requirements set forth in Miranda v. Arizona, 384 U.S. 436 (1966), and the defendant's motion to suppress statements will also be denied. The defendant's motion to suppress identification will be denied, as the photograph identification process was not impermissibly suggestive.

The defendant's motion to disclose confidential informants will be denied, as the public interest in protecting the informant outweighs the defendant's interest in the informant's identity at this point in the case. Pursuant to this conclusion, the court will grant in part and deny in part the defendant's motion to compel an audio tape of the controlled buy between the defendant and the informant. The court will require the government to produce to the defendant a video tape without sound and an accurate transcript.

The Clerk is directed to send certified copies of this Memorandum Opinion and the accompanying Order to all counsel of record.

ENTER:   This 9th day of August, 2006.

_____
United States District Judge

---

[7]At the hearing, defendant's counsel expressed the concern that the transcript previously provided by the government was not accurate. The parties made some effort to address this issue. If there are still concerns about accuracy, the court will compare the audio tape and the transcript to ensure accuracy.

13